**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARSON STELTZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, <br><br> Defendant, | Civil Action No.: 14-2978 (JLL) (JAD) <br><br><br> REPORT & RECOMMENDATION ON PLAINTIFFS' MOTION TO REMAND |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Plaintiffs' Motion to Remand this action to the Superior Court of the State of New Jersey, Union County, Law Division, pursuant to 28 U.S.C. § 1447. (ECF No. 9). The Hon. Jose L. Linares, U.S.D.J. referred Plaintiffs' motion to this Court for a Report and Recommendation. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on Plaintiffs' application. Upon careful consideration of the parties' submissions, and for the reasons stated below, this Court respectfully recommends that Plaintiffs' Motion to Remand be **DENIED**.

    **I.**      **RELEVANT BACKGROUND**

The Resolution Law Group, P.C. commenced this matter by filing a Complaint in the New Jersey Superior Court, Law Division, Union County, on behalf of 87 individual Plaintiffs. (Compl., ECF No. 1-1). Plaintiffs allege, among other things, that Defendant Bank of America, N.A. ("BOA") has "acted as Originator, Lender, or Servicer in some control capacity over originating, servicing, and/or processing Plaintiffs' loans" and committed various "wrongful acts" in connection with those loans. (Id. ¶ 70). Specifically, Plaintiffs allege that Defendant engaged in a scheme whereby it originated loans using inflated appraisals and lax underwriting standards

and then sold those loans to investors. (Id. ¶¶ 187, 190, 204). Plaintiffs also contend that BOA made material misrepresentations to induce Plaintiffs to enter into the loans at issue and otherwise engaged in predatory lending practices. (Id. ¶¶ 250-274). Plaintiffs further allege that Defendants "log[ged] all of their mortgage transfers in a private electronic registry, instead of publicly recording the transfer[s] in the local county clerk's office[s]," enabling BOA to "avoid local recordation statutes and real estate trade custom," and to "transfer, bundle, package and sell mortgages to investors without regard to the valuation of the properties or the lending standards utilized by Defendants." (Id. ¶¶ 161, 189-90). Plaintiffs claim that BOA's utilization of the electronic system of mortgage recordation "has misled the Plaintiffs . . . by concealing the identity of the true owner of a residential mortgage which makes it overly burdensome, if not impossible, for any homeowner to learn the identity of the entity or individual having a security interest in his or her property." (Id. ¶ 181). In turn, Plaintiffs contend that BOA, though its use of that electronic system, has clouded the chains of title to Plaintiffs' property to such an extent that it has, among other things, "intentionally frustrated Plaintiffs' pursuit of information about their mortgages and seeking loan modifications" and made it "difficult, if not impossible for a homeowner to determine whether [a party attempting to foreclose on their homes] has standing to initiate a foreclosure lawsuit." (Id. ¶¶ 183, 206). Finally, Plaintiffs allege that BOA failed to properly utilize funds that it received from the federal government through the Troubled Asset Relief Program ("TARP"), (id. ¶¶ 275-288), which is part of the Emergency Economic Stabilization Act, 12 U.S.C. §§ 5201 et seq. As a result of Defendant's alleged wrongdoing, Plaintiffs claim they have suffered financial loss, and assert eight causes of action: (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-9, et seq.; (2) Intentional Misrepresentation; (3) Negligent Misrepresentation; (4) Negligence; (5) Slander of Title; (6) Ejectment for Wrongful Possession of Claim on Land

Pursuant to N.J.S.A. § 2A:35-1, et seq.; (7) Civil Conspiracy/ Member Liability in Joint Enterprise; and (8) Unjust Enrichment. (Id. ¶ 311-78).

On May 9, 2014, BOA, the sole defendant in this matter, filed a Notice of Removal from the New Jersey Superior Court. (ECF No. 1). BOA asserted that the District Court possessed federal question subject matter jurisdiction over the matter based on Plaintiffs' allegations that Defendants violated obligations imposed by two federal statutes: TARP and the Home Affordable Modification Program, 12 U.S.C. § 5219, et seq. ("HAMP"). (Id. ¶¶ 4-8). On May 30, 2014, BOA filed a motion to dismiss Plaintiffs' claims. (ECF No. 5). By letter dated June 3, 2014, Plaintiffs' former counsel advised that Plaintiffs intended to file a motion to remand the case to the New Jersey Superior Court and requested that the Court stay all briefing in connection with BOA's motion to dismiss. (ECF No. 6). The Hon. Jose L. Linares, U.S.D.J. then administratively terminated BOA's motion to dismiss without prejudice to that defendant's right to refile its application after the Court's resolution of Plaintiffs' forthcoming motion to remand. (ECF No. 7). Plaintiffs filed a motion to remand on June 9, 2014, (ECF No. 9), and that motion is now fully briefed. (ECF Nos. 13, 15).

While Plaintiffs' remand motion was pending, however, the Court received notification that the United States District Court for the Middle District of Florida had, among other things, enjoined Plaintiffs' former counsel, the Resolution Law Group, from continuing to prosecute mass-joinder actions such as this case. (ECF No. 18). The Middle District of Florida also appointed a Receiver for the Resolution Law Group, who, at that court's direction, "request[ed] a stay of these proceedings for a sufficient period of time to permit the Plaintiffs to make arrangements for counsel to represent them." (See Receiver's Report, ECF No. 19-1, at 3). This Court then informally stayed the case temporarily, assuming from the content of the Receiver's

correspondence that the Resolution Law Group's clients had been apprised of the situation and advised to seek alternative representation.

This Court thereafter Ordered Plaintiffs' local counsel of record, Jeanne Lahiff, Esq., to provide the Court with "contact information and last known addresses for **each** of the Plaintiffs" in this case. (ECF No. 20) (emphasis in original). Ms. Lahiff complied with that directive by letter dated January 8, 2015, in which she advised that "the last known addresses of the plaintiffs in this action are listed in the Complaint." (ECF No. 21). Ms. Lahiff also provided a list of Plaintiffs' telephone numbers and e-mail addresses. (ECF No. 21-1). By Order dated January 29, 2015, this Court administratively terminated Plaintiffs' motion to remand "pending resolution of issues concerning Plaintiffs' legal representation." (ECF No. 22).

By Letter Order dated February 17, 2015, which the Court sent to all Plaintiffs via both regular and certified mail, this Court formally struck The Resolution Law Group as Plaintiffs' counsel of record, "strongly" recommended that Plaintiffs retain replacement counsel, and scheduled a mandatory in-person conference for March 27, 2015. (ECF No. 23 at 1). The Court's Order specified that "[e]ither you or your new counsel must attend that hearing", (id. at 1-2) (emphasis in original), and clearly warned that "[i]f either you or your attorney do not appear at the conference, the Court will consider the imposition of sanctions, including dismissal of your claims." (Id. at 2). Despite the mandatory nature of the conference, and the Court's admonition regarding the consequences of non-attendance, only 10 of the 87 named Plaintiffs appeared at the conference. (See ECF No. 42 at 4). Certain other Plaintiffs provided the Court with advance notice of their inability to attend and others sought to dismiss their claims voluntarily. (Id. at 5). On May 4, 2015, this Court entered an Order / Report and Recommendation, on notice to all Plaintiffs, recommending that the District Court dismiss certain Plaintiffs' claims, without

prejudice, for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (Id. at 10-12). By Order dated May 28, 2015, the Hon. Jose L. Linares, U.S.D.J., adopted this Court's recommendation and dismissed the claims of seventy-two (72) Plaintiffs without prejudice.[1]

At this point, only the following thirteen Plaintiffs maintain active claims: (1) Laverne Daramie; (2) Robert Daramie; (3) Melena Davidson; (4) Tyrone Davidson; (5) Santos Garcia; (6) Richard Neuheisel; (7) Jane Neuheisel; (8) Cyrus Quinn; (9) Margaret Quinn; (10) Milagros Rodriguez; (11) Luis Rodriguez; (12) Heather Young; and (13) Duwan Hyman. Now that the Court has resolved the issues concerning Plaintiffs' representation, as well as which Plaintiffs should properly remain parties to this matter, the Court may return its attention to Plaintiffs' motion to remand this matter back to the New Jersey Superior Court, which the parties have already fully briefed.

## II. **LEGAL DISCUSSION**

### a. **Removal and Remand - Generally**

Title 28, § 1441(a) of the United States Code permits a defendant to remove a civil action in state court to a federal court where the action could have been filed originally; that is, where the federal court would have subject matter jurisdiction over the action. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). For instance, a federal district court has original subject matter jurisdiction over all civil actions between citizens of different states, and in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). This is known as "diversity jurisdiction." Federal courts also have subject matter jurisdiction over claims arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1441(a). This is commonly known as "federal

---

[1] In a separate Order, Judge Linares granted Plaintiffs Souphanh and Maly Phonxansinh's application to voluntarily dismiss their claims, without prejudice. (ECF No. 43).

question jurisdiction." A claim "arises under" federal law if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-8 (1983). In certain cases, federal question jurisdiction will also lie over state law causes of action that implicate significant federal issues or "turn on substantial questions of federal law." Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). More specifically, federal question jurisdiction exists over state law claims when "the state law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 308.

The party asserting that the district court has jurisdiction over an action bears the burden of demonstrating that the case is properly in federal court. Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (internal citations omitted); see also Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir.1987)). Section 1447(c) of Title 28 of the United States Code states that a case removed from state court "shall be remanded . . . [i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." When ruling on whether an action should be remanded to the state court from which it was removed, a district court must focus on the operative complaint at the time the petition for removal was filed. Group Hospitalization & Med. Servs. v. Merck-Medco Managed Care, LLP., 295 F. Supp. 2d 457, 461-462 (D.N.J. 2003). It remains the defendant's burden to show the existence and continuance of federal jurisdiction. See Abels v.

6

State Farm Fire & Casualty Co., 770 F.2d 26, 29 (3d Cir. 1985); <u>see also</u> 14A C. Wright, A. Miller, & E. Cooper, <u>Federal Practice and Procedure</u> § 3739.

### b.  Analysis of Federal Question Jurisdiction

In cases that require determination of whether an entity complied with the requirements of TARP and/or HAMP, courts have held that federal question subject matter jurisdiction exists because such cases turn on substantial questions of federal law.  See <u>Peralta v. ABN AMRO Mortgage Group, Inc.</u>, No. Civ A. 2:13-05607 ES, 2014 WL 1673737 at *3 (D.N.J. April 24, 2014) (denying motion to remand because "whether Plaintiffs have standing to sue as third-party beneficiaries of the TARP/HAMP-based agreements" depends on substantial questions of federal law); <u>see also</u> <u>Copeland-Turner v. Wells Fargo Bank, N.A.</u>, No. CV-11-37-HZ, 2011 WL 996706 at *5 (D. Or. Mar. 17, 2011) (denying motion to remand and finding that a plaintiff's right to relief as a third-party beneficiary of a contract between a defendant bank and the federal government through HAMP and TARP depends on the "resolution of a substantial question of federal law"); <u>Larsen v. Bank of Am., N.A.</u>, No. 11-1775, 2011 WL 6065426 at *9 (D. Minn. July 21, 2011) (denying motion to remand, finding that whether plaintiffs have standing to sue as third party beneficiaries of TARP agreements involves "substantial questions of federal law with national implications").  The Court finds that Plaintiffs' state law claims for unjust enrichment, intentional misrepresentation and negligent misrepresentation all turn on substantial questions of federal law (i.e., each requires a determination of whether Defendant complied with certain requirements of federal law in connection with receipt of federal funds) and are therefore sufficient to serve as a basis for federal question subject matter jurisdiction in this matter.

In approximately sixty consecutive paragraphs of the Complaint (i.e., every paragraph referencing one or more specific plaintiffs), Plaintiffs alleged, in pertinent part, that they suffered

harm as a result of "Defendant's failure to perform their obligations required upon their acceptance of TARP funds." (Compl. ¶¶ 6-66, ECF No. 1). Similarly, Plaintiffs allege that their lawsuit arises, in part, from "Defendant's failure to perform their obligations required upon their acceptance of TARP funds, pursuant to written agreements, and for which the Plaintiffs' [sic] were third party beneficiaries." (Id. ¶¶ 2, 275-88). Plaintiffs also identify Defendant's alleged breach of its TARP-related obligations as an express basis for their unjust enrichment claims. (See id. ¶ 365).

The Court finds that Plaintiffs' common law unjust enrichment claim involves a substantial question of federal law, as the determination of that claim will necessarily turn, at least in part, on whether Defendant unduly benefited from federal funding that was intended to help Plaintiffs modify their respective loans. (Id.). To resolve whether Defendant was unjustly enriched through its receipt of federal funds, this Court must determine what obligations TARP and HAMP imposed upon Defendant, whether Defendant's rejection of Plaintiffs' loan modification applications was proper under federal guidelines, and how Defendant used the funds designated to help Plaintiffs modify their loans. This federal issue is also disputed and substantial, as Defendant denies violating TARP and HAMP, (Notice of Removal, ECF No. 1, ¶ 11(ii)), and the proper use of federal funds distributed pursuant to the Emergency Economic Stabilization Act, 12 U.S.C §§ 5201, et seq., constitutes an obvious, substantial federal interest.

Plaintiffs' intentional misrepresentation claim also involves significant federal issues, because Plaintiffs allege that they reasonably relied on Defendant's alleged misrepresentations in "agreeing to loan modifications and/or refinancing agreements." (Compl., ¶ 321, ECF No. 1-1). Plaintiffs' allegations that Defendant "represented…that they could modify [Plaintiffs'] loans to alleviate financial hardship," and "intentionally misled homeowners about their eligibility for the

program" implicate significant federal issues regarding eligibility for the HAMP program and Defendant's compliance with the requirements of TARP. Although Plaintiffs incorporate the TARP/HAMP-related allegations into their intentional misrepresentation claim by reference, they are an essential part of the claim, which specifically refers to Plaintiffs' reliance on misrepresentations in "agreeing to loan modifications." Although Plaintiffs allege a number of intentional misrepresentations that do not specifically relate to loan modifications, the Court finds that Plaintiffs' inclusion of allegations concerning loan modifications, coupled with the fact that TARP imposes specific requirements concerning such modifications, is sufficient to trigger federal question subject matter jurisdiction with regard to Plaintiffs' intentional misrepresentation claim.

Plaintiffs' claim for negligent misrepresentation implicates significant federal issues in an essentially identical manner. Plaintiffs allege that Defendant negligently misrepresented, among other things, that Defendant's "loan modification agreements…were in compliance with applicable laws and regulations." (Compl., ECF No. 1-1, ¶324). To determine whether such statements were, in fact, misrepresentations, the Court must determine whether Defendant complied with the obligations the federal government imposed as a condition of Defendant's receipt of TARP funds. For the reasons stated above, Defendant's compliance with these requirements is in actual dispute and constitutes a significant federal issue. The District Court may, therefore, exercise federal question subject matter jurisdiction over Plaintiffs' negligent misrepresentation claim.

Although TARP and HAMP do not expressly provide a federal private cause of action, the other Grable factors weigh in favor of federal jurisdiction and other courts have recognized this in denying motions to remand in similar cases. See Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (noting that the absence of a federal private cause of

9

action is relevant to <u>but not dispositive</u> of Congressional intent regarding the proper balance between state and federal courts) (emphasis added); <u>Copeland-Turner</u>, 2011 WL 996706 at *5 (recognizing that whether the plaintiff, who was denied a loan modification despite allegedly meeting the eligibility guidelines, could recover on a breach of contract claim based on the defendant bank's TARP and HAMP based contract with the federal government "necessarily depends on the resolution of a substantial question of federal law"); <u>Larsen</u>, 2011 WL 6065426 at *9 (reasoning that although a federal contract alone does not confer federal question jurisdiction, the plaintiffs' claim for declaratory relief as third party beneficiaries to contracts between the defendants and the federal government "place[s] the interpretation of the federal contracts . . . squarely at issue" and therefore raises substantial questions of federal law.). In a substantially similar action, <u>Peralta</u>, the Hon. Esther Salas, U.S.D.J., held that the District Court had federal question jurisdiction over plaintiffs' breach of contract claim, which was based on their alleged third party beneficiary status of the defendants' TARP and HAMP-based agreements. <u>See</u> 2014 WL 1673737 at *3. As several counts in the instant action turn on issues related to Plaintiffs' alleged status as third party beneficiaries of the TARP and HAMP-based agreements, this Court likewise finds that it has federal question jurisdiction over those claims.

    b.    <u>**Supplemental Jurisdiction**</u>

The Court notes that many of Plaintiffs' claims do not appear to directly implicate TARP or HAMP. Moreover, while Plaintiffs have incorporated their TARP and HAMP-related allegations into each cause of action by reference, only the causes of action expressly discussed above (unjust enrichment, intentional misrepresentation and negligent misrepresentation) appear to require an examination of Defendant's compliance with obligations imposed under these statutory schemes. Plaintiffs' remaining causes of action, therefore, appear to arise solely under

state law and do not implicate any questions of federal law. Pursuant to 28 U.S.C. § 1367, however, a court may exercise supplemental jurisdiction over the state law aspects of a plaintiff's claim if the court has federal question jurisdiction over some of the claims at issue and if the state law claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

Because this Court finds that Plaintiffs' claims for intentional misrepresentation, negligent misrepresentation and unjust enrichment all implicate significant federal issues, this Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Plaintiffs' related state law claims. The Court finds that the remaining claims in this action (violation of the NJCFA, negligence, slander of title, ejectment for wrongful possession of claim on land, civil conspiracy/member of liability in joint enterprise) all relate to the same alleged scheme of fraudulent mortgage practices, and are therefore all part of the same case or controversy. The Court further finds that this is a sufficient basis upon which to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

## IV. CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the District Court **DENY** Plaintiff's Motion to Remand. (ECF No. 9).

JOSEPH A. DICKSON, U.S.M.J.

cc: Honorable Jose L. Linares, U.S.D.J.
Plaintiffs Robert Daramie, Santos Garcia, Luis Rodriguez and Duwan Hyman (U.S. mail)
All other remaining Plaintiffs and counsel (via ECF)

11